```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RAYMOND MCCLAIN,                             :
                                             :       MEMORANDUM AND ORDER
                        Plaintiff,           :       18-cv-03781 (DLI)(CLP)
                                             :
        -against-                            :
                                             :
ROCHDALE VILLAGE, et al.,                    :
                                             :
                        Defendants.          :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

On June 29, 2018, Raymond McClain ("Plaintiff") timely filed this action after receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") against Rochdale Village, Timothy Dickinson, and Gil Francisco ("Defendants") for, *inter alia*, employment discrimination, hostile work environment, wrongful termination, and unlawful retaliation pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000 *et seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq. See*, Complaint ("Compl."), Dkt. Entry No. 1, at ¶¶ 1, 10-11.

Defendants moved to compel arbitration and to dismiss or stay the action pending arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and Fed. R. Civ. P. 12(b)(6). *See*, Defendants' Motion to Compel Arbitration and to Dismiss or Stay the Action ("Defs.' Mot."), Dkt. Entry No. 37. Plaintiff opposed the motion. *See*, Plf.'s Opp'n to Defs.' Mot. ("Plf.'s Opp'n"), Dkt. Entry No. 39. Defendants replied. *See*, Defs.' Rep. in Supp. of Defs.' Mot. ("Defs.' Rep."), Dkt. Entry No. 40. For the reasons set forth below, Defendants' motion to compel arbitration and stay proceedings is granted, and Defendants' motion to dismiss is denied.

## BACKGROUND

Plaintiff alleges that, in November 2013, he was hired as Rochdale Village's first Black plant technician after achieving the highest score in a qualifying exam administered by Rochdale Village. Compl. at ¶ 13. After Defendants learned that Plaintiff was Black, he was subjected to various forms of discrimination, including being given a different uniform to wear, assignment to menial tasks, and having his desk moved from the management office to a storage area. *Id.* at ¶¶ 14-15. After Plaintiff complained to Rochdale Village's Human Resources department, Defendants retaliated against him by initiating various unjustified disciplinary actions such as for being late to receive work assignments and sleeping on the job. *Id.* at ¶¶ 16-20. Plaintiff further alleges that Caucasian employees at Rochdale Village were treated more leniently than Plaintiff for more severe infractions and were afforded higher pay and more opportunities to earn overtime pay. *Id.* at ¶¶ 19-22. On or about January 19, 2017, Plaintiff alleges he was fired in retaliation for reporting the alleged discriminatory acts to the Human Resources department and the EEOC. *Id.* at ¶¶ 18, 23.

It is undisputed that, during his employment with Rochdale Village, Plaintiff was a part of the International Union of Operating Engineers Local Union No. 94, which was subject to a collective bargaining agreement ("CBA") with Rochdale Village. *See*, Decl. of Jay Williams in Supp. of Defs.' Mot. ("Williams Decl."), Dkt. Entry No. 36 at ¶¶ 9-10; Aff. of Tracey L. Brown in Supp. of Plf.'s Opp'n ("Brown Aff."), Dkt. Entry No. 38 at ¶ 5. The parties have submitted different versions of the CBA for the Court's review. Defendants submitted the CBA in effect from September 1, 2015 through August 31, 2020. *See*, CBA, Exhibit A to the Williams Decl., Dkt. Entry No. 36-1. Plaintiff submitted the CBA in effect for that same period as well as the version in effect from September 1, 2012 through August 31, 2015. *See*, CBA, Exhibit 3 to the

Brown Aff., Dkt. Entry No. 38-3. Defendants do not dispute the applicability of Plaintiff's version of the CBA. Moreover, the pertinent language at issue in Articles 6 and 7 of the CBA, as explained below, is the same in all versions provided by the parties.

## DISCUSSION

**I.     Arbitrability of Plaintiff's Claims Under the Collective Bargaining Agreement**

"The Federal Arbitration Act ('FAA') creates a body of federal substantive law of arbitrability applicable to arbitration agreements affecting interstate commerce." *Ragone v. Atlantic Video*, 595 F.3d 115, 121 (2d Cir. 2010) (internal citation, alteration, and quotation marks omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Supreme Court "repeatedly [has] described the [FAA] as embodying a national policy favoring arbitration, and a liberal federal policy favoring arbitration agreements[.]" *Id.* at 346 (internal citations, alterations, and quotation marks omitted).

When a party seeks to compel arbitration under the FAA, the Court must engage in a four-step inquiry: "[f]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988). "In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This standard "requires a court to 'consider all

relevant, admissible evidence submitted by the parties and contained in the pleadings[.]'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.*

The Court finds, and the parties do not dispute, that the CBA is a contract "involving commerce" under the FAA. 9 U.S.C. § 2. The parties agree that they are subject to the terms of the CBA. *See*, Williams Decl. at ¶ 10; Brown Aff. at ¶ 5. The parties also agree that Articles 6 and 7 of the CBA govern the applicable grievance and arbitration procedures. *See*, Defs.' Mot. at 2-3; Plf.'s Opp'n at 3. While Plaintiff's opposition cites to Articles 5 and 6 of the CBA, the cited language actually is contained in Articles 6 and 7. *See*, Plf.'s Opp'n at 3. Therefore, there is no dispute as to whether the parties agreed to arbitrate under the terms of the CBA.

The parties disagree as to the scope of arbitration. Defendants maintain that the arbitration language of the CBA is broad and covers all of Plaintiff's claims, including those for wrongful termination, retaliation, and discrimination. *See*, Defs.' Mot. at 8. Plaintiff maintains that the CBA contains no provisions regarding such claims or a requirement that such claims be resolved through arbitration. *See*, Plf.'s Opp'n at 2. However, the Court first must determine whether the parties agreed to delegate the question of arbitrability to an arbitrator.

"The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.'" *NASDAQ OMX Group, Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Where the "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Therefore, "the question of who decides arbitrability is itself a

4

question of contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* at 528.

"[V]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Paduano v. Express Scripts, Inc.*, 55 F. Supp.3d 400, 415 (E.D.N.Y. 2014) (collecting cases); *See*, also *Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 Fed. Appx. 20, 21 (2d Cir. 2013) (affirming grant of motion to dismiss where the AAA's rules were incorporated into employment agreement); *Mobile Real Estate, LLC v. NewPoint Media Grp., LLC*, 460 F. Supp.3d 457, 470 (S.D.N.Y. 2020) (incorporation of AAA rules is clear and unmistakable evidence of intent to delegate questions of arbitrability).

Article 7 of the CBA provides that:

A. In the event a grievance has not been finally adjusted or resolved in Step 2 of the grievance procedures, a Party may, within the time limits set forth herein, submit the grievance to arbitration pursuant to the rules of the Federal Mediation and Conciliation Service ("FMCS") or the Labor Arbitration Rules of the American Arbitration Association ("AAA") . . . .

CBA Article 7(A). The Court is satisfied that Article 7(A) and the additional clauses in Article 7 discussing the AAA sufficiently incorporate the AAA's arbitration rules into the CBA. *Id.* Article 7(B)-(D) and (G). Moreover, Plaintiff does not dispute AAA's incorporation into the CBA or its applicability here.

The CBA states that parties may avail themselves of either the FMCS or AAA. *Id.* Article 7(A). However, the parties have not submitted any admissible evidence of the rules governing the

5

FMCS. Neither party suggests that the rules of the FMCS would have any bearing on the question of arbitrability. Thus, the Court does not consider the FMCS as it is not part of the record.

The AAA's rules provide in pertinent part that:

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract . . . .

AAA Labor Arbitration Rules 3(a)-(b) (July 1, 2013), https://adr.org/sites/default/files/Labor_Arbitration_Rules_3.pdf. The CBA further provides that "[i]t is the function of the Arbitrator to interpret the Agreement." CBA Article 7(E). Taken together, this indicates a clear intent by the parties to delegate arbitrability to an arbitrator.

Plaintiff contends that his claims fall outside the scope of arbitration under the CBA. Article 6 of the CBA applies the grievance and arbitration process where "any grievance or dispute arises out of the interpretation, performance or applicability of any term or provision of this contract." CBA Article 6. However, even if "the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless,'" no such exception exists within the FAA, and "the court must respect the parties' decision as embodied in the contract." *Henry Schein, Inc.*, 139 S. Ct. at 528. The Supreme Court explained that "the 'wholly groundless' exception is inconsistent with the text of the [FAA] and with our precedent." *Id.* at 529. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id.* In other words, under these circumstances, even assuming, *arguendo*, that the CBA does not appear to govern Plaintiff's claims, that is ultimately a question for an arbitrator to resolve, not the Court.

Plaintiff cites to several cases that are factually distinct from the case at bar and do not account for the CBA's incorporation of the AAA's rules delegating arbitrability to an arbitrator. Those cases require a collective bargaining agreement to include a "clear and unmistakable" waiver of certain federal statutory claims in order to avoid arbitration. *See*, *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998); *Lawrence v. Sol G. Atlas Realty Co., Ins.*, 841 F.3d 81, 83 (2d Cir. 2016); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999). As discussed above, the AAA's rules establish such a waiver. Plaintiff's reliance on *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 171 (2005) also is misplaced as it does not discuss a collective bargaining agreement, arbitration, or waiver of federal statutory rights. *See*, *Id.* (discussing motion to dismiss a Title IX claim).

Section 2.2 of Rochdale Village's Employee Manual ("the Manual") also includes a mandatory binding arbitration clause between employees and Rochdale Village:

> . . . any claim, dispute, or controversy which would otherwise require or allow resort to any court . . . (including, but [sic] limited to any and all claims of discrimination and harassment) . . . whether based on tort, contract, statutory or otherwise . . . shall be submitted to and determined exclusively by binding arbitration. Employee understands that by agreeing to this binding arbitration provision, both Rochdale Village, Inc. and the employee give up their rights to trial by jury or judge.

The Manual, Exhibit 2 to the Brown Aff., Dkt. Entry No. 38-2 at 15-16. While included as part of Rochdale Village's Sexual Harassment Policy, the text of the policy is much broader than the name suggests and discusses "any form of prohibited discrimination/harassment, including sexual harassment." *Id.* at 13. The mandatory binding arbitration clause, if applicable, clearly resolves this dispute in favor of arbitration, and would appear to make plaintiff's opposition frivolous. Indeed, Plaintiff's counsel avers to the Manual's authenticity. *See*, Brown Aff. at ¶ 4. However, the submitted Manual is unsigned by any employee, and the parties have not presented any evidence that the Manual was binding on Plaintiff and Defendants at any point in time. Thus, the

7

Court does not consider the Manual in reaching its decision. However, Plaintiff is cautioned to be mindful of its Rule 11 obligations when making future representations and arguments to the Court or face sanctions.

Accordingly, the CBA's incorporation of the AAA's rules demonstrates a clear and unmistakable intent by the parties to have arbitrability determined by an arbitrator.

## II. Waiver of Defendants' Right to Arbitration

In determining whether a party has waived its contractual right to arbitration, courts consider three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation omitted). While there is no bright line rule, "[t]he key to a waiver analysis is prejudice." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 210 F.3d 102, 105 (2d Cir. 2002). The Second Circuit has "recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." *La. Stadium*, 626 F.3d at 159. Waiver "is not to be lightly inferred." *Thyssen*, 210 F.3d at 104-05. Substantive prejudice can result "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration [causing] unnecessary delay or expense." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991). "[A]ny doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995).

The Court finds that Defendants have not waived their right to arbitration and the record does not support a finding that Plaintiff has suffered any prejudice. First, the time elapsed, by

8

itself, does not establish waiver. Plaintiff commenced this action by filing his Complaint on June 29, 2018. Dkt. Entry No. 1. Two months later, on August 29, 2018, Defendants alleged that Plaintiff failed to exhaust his "arbitral remedies" as an affirmative defense in their Answer. *See*, Dkt. Entry No. 11. The parties conducted discovery before participating in mediation, during which time this action was stayed for approximately three months. *See*, Dkt. Entry No. 27. Following an unsuccessful mediation, by letter dated April 21, 2020, the parties advised that Defendants intended to file the instant motion to compel arbitration. *See*, Dkt. Entry No. 29.

Second, it appears that the parties nearly completed fact discovery with only one deposition remaining. *Id.*; Plf.'s Opp'n at 6. No dispositive motions such as a motion to dismiss or motion for summary judgment were filed. Thus, while Defendants first raised the prospect of arbitration in their Answer, they waited to move to compel arbitration until after the parties had engaged in discovery and failed to reach an agreement at mediation nearly two years after the action was commenced. While the Court struggles to understand why Defendants waited so long to pursue arbitration, this alone does not establish waiver. *See*, *Rush v. Oppenheimer & Co.*, 779 F.3d 885, 891 (2d Cir. 1985) ("Although granting defendants' demand for arbitration at this point may be sanctioning a less efficient means of resolving this dispute, we reemphasize that neither efficiency nor judicial economy is the primary goal behind the arbitration act.").

Third, there is insufficient evidence of actual prejudice to Plaintiff. Beyond undertaking pretrial discovery and a delay during mediation, Plaintiff does not present any other evidence of prejudice. Plaintiff does not claim that Defendants availed themselves of discovery not available in an arbitral forum. *See*, *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993). The parties sharply dispute the necessity and substance of the discovery taken to date. *See*, Defs.' Rep. at 5; Plf.'s Opp'n at 6. That raises doubt as to the existence of prejudice, which must be "resolved in favor

of arbitration." *Leadertex*, 67 F.3d at 25. Accordingly, the Court finds that Defendants have not waived their contractual right to arbitration.

## III. Defendants' Motion to Dismiss

Defendants seek dismissal or, in the alternative, a stay of this action pending arbitration. The FAA requires a stay of proceedings where all claims have been referred to arbitration and a stay is sought. *See*, 9 U.S.C. § 3. New York State law also mandates a stay when a motion to compel arbitration is granted. *See*, CPLR § 7503(a). Where a party's motion to compel arbitration seeks either a stay or a dismissal, dismissal is inappropriate. *See*, *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 226 n.5 (2d Cir. 2019). Defendants' motion to dismiss is not premised on anything other than the desire for arbitration. Accordingly, the motion to dismiss is denied, and all proceedings in this case are stayed pending the conclusion of arbitration.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to compel arbitration and stay this matter pending arbitration is GRANTED and Defendants' motion to dismiss is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       July 16, 2021

/s/
DORA L. IRIZARRY
United States District Judge